TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2017-SC-000255-KB

DATE 10/10/17 Kim Redmon, DC

KENTUCKY BAR ASSOCIATION                                                 MOVANT


V.                                    IN SUPREME COURT


LAUREN M. THOMPSON                                              RESPONDENT


## OPINION AND ORDER


Lauren Thompson was admitted to practice law in the Commonwealth of Kentucky on April 30, 2010. Her bar roster address is 100 Logan St., Suite 201, Williamson, West Virginia 25661, and her KBA Member Number is 93483. On April 10, 2017, the Supreme Court of Appeals of West Virginia suspended Thompson from the practice of law for three (3) months; ordered Thompson to complete an additional twelve (12) hours of continuing legal education; and required Thompson to pay the costs of the disciplinary proceedings. On May 31, 2017, the Kentucky Bar Association (KBA) filed a petition asking this Court to order Thompson to show cause why we should not impose reciprocal discipline and, in the event we found cause lacking, to impose that discipline pursuant to Supreme Court Rule (SCR) 3.435. On June 7, 2017, we issued a show cause order, and on August 1, 2017, Thompson filed a response objecting

to the imposition of reciprocal discipline. This matter is now ready for decision by the Court.

## I. BACKGROUND.

### A. Procedural History and Charges.

West Virginia instituted disciplinary charges against Thompson on January 6, 2016. The Hearing Panel Subcommittee (HPS) found violations of the West Virginia Rules of Professional Conduct and recommended that Thompson be suspended for three months, required to petition for reinstatement, and attend an additional twelve hours of continuing legal education in the area of abuse and neglect and/or law office management in addition to paying the costs of the disciplinary proceeding. The Supreme Court of Appeals of West Virginia adopted the three-month suspension recommended by HPS, along with the recommendation of the completion of additional continuing legal education; held that automatic reinstatement after suspension of three months was appropriate; and required Thompson to pay the costs of the disciplinary proceedings.[1] The Supreme Court of Appeals of West Virginia described the facts of Thompson's violations as follows:

> In 2013, Ms. Thompson was appointed guardian ad litem of a four-month-old infant who was the subject of CPS [child protective services] proceedings. Ms. Thompson represented the child as

---

[1] We note that the Chief Justice of the Supreme Court of West Virginia dissented from the majority opinion and would impose an 18-month suspension, to be followed by two years of supervised practice, as well as the other sanctions adopted by the majority. Justice Workman concurred in the suspension issued by the majority, but would have permanently barred Thompson from taking court appointments as guardian ad litem in abuse/neglect and family law matters, and would require that she petition for reinstatement and undergo one year of supervised practice subsequent to any reinstatement. *Lawyer Disciplinary Board v. Thompson*, 16-0003 (WV 2017).

guardian ad litem throughout the course of the abuse and neglect proceedings. On or about February 9, 2015, the Circuit Court of Mingo County, the Honorable John Cummings, Senior Status Judge, presiding, entered an order terminating the parental, custodial, and guardianship rights of the child's biological mother and father. Ms. Thompson represented to Judge Cummings that, upon her independent investigation, she agreed with the position of CPS and recommended that the parental rights be terminated.

Both the mother and father filed notices of intent to appeal with this Court. Initially, we issued separate scheduling orders for each parent's appeal. Subsequently, this Court issued an order directing the filing of a joint appendix and further ordering the filing of briefs or summary responses by Ms. Thompson as guardian ad litem on or before May 20, 2015.

Ms. Thompson failed to file a brief or summary response on or before May 20, 2015. On May 22, 2015, a staff member of the West Virginia Supreme Court Clerk's Office ("Clerk's Office") telephoned Ms. Thompson's law office and left a message with an office assistant advising that the briefs in the pending appeals were past due. Thereafter, no responsive briefs were filed by Ms. Thompson.

By Order entered May 27, 2015, this Court issued Notices of Intent to Sanction and Amended Scheduling Orders in the appeals of both the father and the mother. The Order directed Ms. Thompson to file briefs or summary responses on or before June 1, 2015. She was reminded that failure to comply could result in the imposition of sanctions. The Notices and Orders were issued through certified mail.

Again, Ms. Thompson failed to file a brief or summary response as required of guardians ad litem and as ordered by this Court. On or about Friday, June 5, 2015, a staff attorney in the Clerk's Office sent Ms. Thompson an e-mail advising her that the Court had issued Notices of Intent to Sanction. Copies of the Notices were included as attachments to the e-mail. The staff attorney requested that Ms. Thompson file her responses as soon as possible. On Monday, June 8, 2015, Ms. Thompson e-mailed the staff attorney stating, in pertinent part, "I have no idea what is going on. . . . I was unaware of any of this. I will figure out what has happened today."

Thereafter, the staff attorney replied to Ms. Thompson advising her that responses could be submitted by fax to the Clerk's Office

3

together with a motion to file the responses out of time. The staff attorney attached a signed confirmation demonstrating that Ms. Thompson's law office had received the Notices and Orders of May 27, 2015.

We note that Ms. Thompson testified before the HPS that she was unaware of the pending appeals until she received the e-mail on June 8, 2015. Specifically, Ms. Thompson testified to a lack of staff and staff failures at her office that resulted in her lack of knowledge of the appeals. Ms. Thompson did recognize her ultimate responsibility for any problems and challenges with her staff.

Still having received no briefs or summary responses from Ms. Thompson, this Court, on its own motion, entered Orders on June 11, 2015, wherein rules to show cause in contempt were awarded and issued against Ms. Thompson in both appeals for her failure to timely file the response briefs. The rules to show cause why she should not be held in contempt of court were returnable on September 2, 2015, unless sooner mooted by the filing of briefs. Ms. Thompson personally signed the return receipt confirmation on June 17, 2015, indicating she received the Orders of June 11, 2015. Nevertheless, Ms. Thompson continued in her failure to represent the infant and failed to file any responses.

. . . Staff in the Clerk's Office called, contacted, and/or attempted to contact Ms. Thompson about the filing of responses on July 5, 2015; July 23, 2015; August 7, 2015; and August 14, 2015. On each occasion, Ms. Thompson was unavailable to take the calls. Further, Ms. Thompson did not return any of the phone calls or contacts from the Clerk's Office.

It appears that Thompson blamed her failure to respond on office staff and also on her frustrations with the Department of Health and Human Resources (DHHR) in Mingo County, West Virginia. Thompson conveyed these frustrations to Judge Cummings at a judicial review hearing of the infant child, wherein Judge Cummings advised her to file her briefs or the West Virginia Supreme Court would implement sanctions.

4

Thompson finally submitted her briefs the day before oral argument on the show cause order. On September 3, 2015, the West Virginia Supreme Court entered an Order finding that Thompson's justification for failing to file her briefs was unsatisfactory. The West Virginia Supreme Court issued a second rule to show cause why she should not be held in contempt. Thompson responded to the Order to Show Cause asserting that her concerns with the DHHR were the reasons for the late filing of her briefs. Oral argument on the show cause order was held on September 15, 2015. On September 30, 2015, the West Virginia Supreme Court held Thompson in contempt and ordered that she be denied eligibility for guardian ad litem and other court appointments until such time as the investigation of disciplinary proceedings could conclude.

The Office of Disciplinary Counsel (ODC) found that Thompson failed to timely file a brief or a summary response as a guardian ad litem for a child in the abuse and neglect case, thus violating the West Virginia Rules of Professional Conduct (Rules) 1.1[competence], 1.3[diligence], and 8.4(d)[prejudice to the administration of justice]. The ODC also found that Thompson failed to zealously advocate for her client, the child, in the abuse and neglect proceedings and because her own actions caused delay and potential harm to the minor child by delaying permanency by several months, violated Rules 1.1[competence], 1.2 [failure to take necessary action on minor's behalf to achieve ultimate goal of permanency], and 1.7 [conflict of interest]. Finally, the ODC found that Thompson violated Rule 8.4(d) [prejudice to the administration of justice] and Rule 3.4(c) [knowingly disobeying an obligation

5

under the rules of a tribunal] when she failed to obey numerous orders from the Supreme Court to file a brief or summary response which resulted in a finding of contempt by the highest court in the state.

## II. ANALYSIS.

The only question for this Court to decide is whether identical reciprocal discipline or a lesser sanction is warranted. This Court shall "impose the identical discipline unless Respondent proves by substantial evidence: (a) a lack of jurisdiction or fraud in the out-of-state disciplinary proceeding, or (b) that misconduct established warrants substantially different discipline in this state." SCR 3.435(4).

Thompson has not alleged lack of jurisdiction or fraud in the West Virginia proceedings. Thompson does assert, in her Response to Petition for Reciprocal Discipline, that her misconduct warrants substantially different discipline in the Commonwealth. In large part, Thompson, although acknowledging her failure to timely file her briefs, continues to assert that she had good reason to do so. This Court is not convinced. Thompson may have had frustrations with the West Virginia DHHR and those frustrations may have been well-founded. Those frustrations, however, did not provide justification for Thompson's willful disregard of the West Virginia Supreme Court's orders. Furthermore, those frustrations do not support her contention that this Court should impose a lesser sanction.

Thompson argues that she should only be given a reprimand in Kentucky because the West Virginia disciplinary actions and subsequent

6

suspension had a negative impact on her law practice, which in her view, is more than enough punishment for her actions. In light of the West Virginia sanctions, and the dissents that would impose harsher penalties, this Court is not persuaded by Thompson's arguments.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.  Respondent, Lauren Thompson, is subject to reciprocal discipline for the misconduct found by the West Virginia Supreme Court. Respondent's misconduct is established conclusively for purposes of disciplinary proceedings in this State.

2.  Respondent is suspended from the practice of law in Kentucky for a period of three months. The period of suspension shall commence on the date of entry of this Opinion and Order. Respondent is also ordered to complete an additional twelve (12) hours of continuing legal education classes in the area of abuse and neglect and/or ethics and law office management. Proof of completion of the additional continuing legal education classes in West Virginia will comply with this Order.

3.  In accordance with SCR 3.450, Respondent is directed to pay all costs associated with these disciplinary proceedings against her, if there are any, for which execution may issue from this Court upon finality of this Opinion and Order.

4.  Should Respondent currently have any clients, pursuant to SCR 3.390, she shall, within ten days from the entry of this Opinion and Order, notify all clients in writing of her inability to represent them, and notify

all courts in which she has matters pending of her suspension from the practice of law, and furnish copies of said letters of notice to the Office of Bar Counsel. To the extent possible, Thompson shall immediately cancel and cease any advertising activities in which she is engaged.

All sitting. All concur.

ENTERED: September 28, 2017.

CHIEF JUSTICE

8